|   |   |   |
|---|---|---|
| 1 | UNITED STATES DISTRICT COURT | |
| 2 | EASTERN DISTRICT OF WASHINGTON | |
UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 28, 2019

SEAN F. McAVOY, CLERK

RALPH J.,

    Plaintiff,

v.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,[1]

    Defendant.

No. 1:18-CV-3164-JTR

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 13, 14. Attorney D. James Tree represents Plaintiff; Special Assistant United States Attorney Franco L. Becia represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

Plaintiff filed an application for Supplemental Security Income (SSI) alleging disability since September 1, 2014, due to degenerative disc disease, Hepatitis C, cirrhosis of the liver, osteoporosis, depression, right wrist pain, left

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

foot pain from fracture, back pain from crush injury to L5, GERD, neck pain, mental disability, and broken collar bone. Tr. 252, 273. Plaintiff's application was denied initially and upon reconsideration.

Administrative Law Judge (ALJ) Eric S. Basse held a hearing on May 8, 2017, Tr. 73-126, and issued an unfavorable decision on July 6, 2017, Tr. 18-30. The Appeals Council denied review on June 23, 2018. Tr. 1-5. The ALJ's July 2017 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on August 24, 2018. ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on October 17, 1963, and was 50 years old on the alleged disability onset date, September 1, 2014. Tr. 252. He completed the 10th grade in high school and completed Job Corps food service training in 1981. Tr. 79, 274, 514. Plaintiff's disability report indicates he stopped working on August 31, 2005, because of his condition. Tr. 273.

Plaintiff testified at the administrative hearing held on May 8, 2017, that he lived with his mother and would occasionally help with yard work. Tr. 84-86. Plaintiff stated he also recently started working part-time (nine to 12 hours per week) at Burger King and periodically volunteered at the St. Vincent De Paul food bank. Tr. 79-84. However, he indicated he would not be able to work eight hours a day, five days a week because it would be too painful. Tr. 92-93. Plaintiff testified he continued to work, despite his back pain, because he liked to work and stay busy. Tr. 98. He stated he would take 800 milligrams of Ibuprofen, as needed, when he started to feel pain. Tr. 99, 101.

///

In his free time, Plaintiff would watch television, take his girlfriend out to eat, and go to a Planet Fitness gym. Tr. 110-112. He did not have a driver's license at the time of the administrative hearing. Tr. 112.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through

four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show there are other jobs in the national economy that the claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On July 6, 2017, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date, October 7, 2014. Tr. 20.

At step two, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease, liver disease/cirrhosis, history of left foot fracture with open reduction internal fixation, and major depressive disorder. Tr. 20.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 21.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined he could perform light work with the following limitations: he could only occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; he could only occasionally balance, kneel, stoop, crouch, and crawl; he could be exposed to no more than a moderate noise level; he could not be required to engage in verbal communication other than periodic incidental discussions with

co-workers; he could not be required to conduct job tasks over the phone or tasks that required careful verbal instructions; he could be exposed to no more than occasional vibration and hazards such as unprotected heights and moving machinery; and he could perform simple, routine tasks and may have intermittent disruptions of attention and concentration due to his pain symptoms and mental perceptions, but these would not preclude the ability to perform simple tasks within an average schedule and workweek the majority of the time. Tr. 22-23.

At step four, the ALJ determined Plaintiff has no past relevant work. Tr. 28.

At step five, the ALJ found that based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience and RFC, Plaintiff could perform other jobs present in significant numbers in the national economy, including the jobs of marker; assembler, small products II; and garment folder. Tr. 29-30. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from October 7, 2014, the date the disability application was filed, through the date of the ALJ's decision, July 6, 2017. Tr. 30.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred (1) in rejecting Plaintiff's symptom testimony; and (2) in assessing the medical opinion evidence. ECF No. 13 at 1.

## DISCUSSION

**A.     Plaintiff's Symptom Testimony**

Plaintiff first argues the ALJ erred by rejecting his symptom testimony for reasons which were not specific, clear and convincing. ECF No. 13 at 8-12.

///

///

It is the province of the ALJ to make credibility determinations. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical and other evidence of record. Tr. 24.

The ALJ first determined Plaintiff's treatment record failed to establish more restrictive functioning than outlined in his RFC assessment. Tr. 24.

A lack of supporting objective medical evidence is a factor which may be considered in evaluating an individual's credibility, provided it is not the sole factor. *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991) (Once a claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject the claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain.); *Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 883 (9th Cir. 2006) (An ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence.").

The ALJ noted Plaintiff had a history of back pain that predated his alleged onset date. Tr. 24. However, the ALJ found no indication of nerve impingement, Tr. 654-655, April 2017 imaging showed Plaintiff's compression fractures at L4

and T12 had been stable since 2010, Tr. 870-871, examinations persistently showed full strength and sensation, Tr. 427, 477, 970, range of motion was only occasionally decreased, Tr. 691, 970 (normal range of motion noted), and straight leg raise was positive only on the right, Tr. 468, 477. Tr. 24.

With respect to Plaintiff's mental health, a June 2015 consultative psychiatric evaluation with Greg D. Sawyer, M.D., Ph.D., revealed that although Plaintiff continued to take psychiatric medications, he did not feel he was depressed and wanted to discontinue the medications as he believed they were useless, but continued to take the medications because he understood if he stopped, he would lose his state benefits. Tr. 514. In November 2014, Plaintiff had no complaints of depression or anxiety, Tr. 427, and in December 2014 his mental status exam was normal, Tr. 451 (noting "Alert and oriented x3. Mood and affect normal."). Plaintiff did present for mental health treatment at Comprehensive Mental Health in June 2015, Tr. 677, however, he only attended three appointments before he was discharged for failing to keep appointments and reschedule, Tr. 685, and there are no further notations of any therapy in the record. Tr. 26. Plaintiff's mental status examinations continued to be within normal limits, Tr. 754 (noting appropriate mood and affect, appropriate behavior, and normal attention span and concentration), and his insomnia symptoms were noted to be "well controlled" with medication, Tr. 757.

Based on the foregoing, the medical record does not align with Plaintiff's allegations of completely disabling physical and mental symptoms in this case. Consequently, the ALJ's finding that Plaintiff was not as limited as he has alleged is supported by substantial evidence.

The ALJ additionally indicated Plaintiff had largely undergone only conservative treatment measures. Tr. 25.

Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751

(9th Cir. 2007); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (finding conservative treatment suggests a lower level of both pain and functional limitation).

At the administrative hearing Plaintiff testified he would take Ibuprofen, as needed, for his pain. Tr. 25, 99, 101; *see Parra*, 481 F.3d at 750-751 (being treated with over-the-counter pain medication is an example of "evidence of 'conservative treatment'" that is "sufficient to discount a claimant's testimony regarding severity of an impairment."). As indicated by the ALJ, although Plaintiff stated he was not interested in taking medication that had the potential for addiction, such as narcotics, there was no indication he had been offered a prescription for these medications. Tr. 25. Plaintiff did try epidural steroid injections in 2014, but he stopped those injections later that year and did not receive any treatment, other than medication management, until he presented for some chiropractic adjustments in mid-2016. Tr. 25, 400-420, 689-723. Following the chiropractic appointments, Plaintiff received very minimal treatment. Tr. 25.

Plaintiff's history of conservative treatment for his symptoms was a sufficient reason to discount his testimony regarding the severity of his impairments.

The ALJ next noted inconsistencies within the record that detracted from Plaintiff's reliability regarding his impairments. Tr. 25-26.

In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). When a claimant fails to be a reliable historian, "this lack of candor carries over" to other portions of his testimony. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

///

///

Contrary to Plaintiff's testimony at the administrative hearing, Tr. 94, the record contains no complaints of balance difficulties and no treatment for falls during the relevant time period. Tr. 25. The ALJ also mentioned Plaintiff reported to his providers that he had been abstinent from alcohol "for many years," Tr. 25, 514, 816 (no alcohol for prolonged period of time), yet elsewhere in the record he admitted to occasional alcohol use, Tr. 514, 864, 867. Furthermore, with respect to Plaintiff's alleged memory deficits, the ALJ noted that Plaintiff's alleged inability to recall his own telephone number, Tr. 516, was inconsistent with his ability to multi-task during his shifts at Burger King. Tr. 26, 81-83. The ALJ further indicated Plaintiff's ability to run the broiler at Burger King was inconsistent with his claim that he was unable to twist/turn side-to-side or turn to reach. Tr. 25-26.

The ALJ properly found the foregoing inconsistencies detracted from Plaintiff's reliability regarding his impairments.

The ALJ next concluded Plaintiff's activities were inconsistent with greater limitations than as assessed by the ALJ. Tr. 25-26. It is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ noted, contrary to Plaintiff's complaints of debilitating back pain, that Plaintiff was able to volunteer at a food bank, lifting 10 to 15 pounds, and work three-hour shifts on his feet at Burger King for several days in a row. Tr. 25, 79-83. The ability to perform even part-time work can be considered in assessing a claimant's credibility. *Bray v. Comm'r Social Security Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding the ALJ properly discounted the claimant's testimony because she recently worked as a personal caregiver for two years and had since sought out other employment).

It was proper for the ALJ to find Plaintiff's work activities were inconsistent with his allegations of totally disabling symptoms and thus detracted from his overall credibility. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012)

("Even where [a claimant's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

Finally, the ALJ noted an instance indicative of secondary gain motivation. Tr. 26.

The Ninth Circuit has recognized that an ALJ may properly consider the issue of motivation or secondary gain in assessing credibility. *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992); *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998); *Gaddis v. Chater*, 76 F.3d 893, 896 (8th Cir. 1996) (allowing an ALJ to judge credibility based on a strong element of secondary gain).

As discussed above, Plaintiff mentioned in the June 2015 consultative exam with Dr. Sawyer that he continued to take psychiatric medications only because he believed if he stopped, he would lose his state benefits. Tr. 514, 517 (Plaintiff related "[h]e does not believe that he has anything wrong with him."). As found by the ALJ, it appears Plaintiff only took psychiatric medications to retain state benefits. Tr. 26, 514 (indicating Plaintiff "does not feel that he is depressed, and he would like to discontinue [the medications]. He just cannot right now"), 517 (stating Plaintiff "tells me that he has felt depressed, and he knows what it is like, and he does not feel that right now").

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). After reviewing the record, the Court finds the ALJ provided clear and convincing reasons, which are fully supported by the record, for finding Plaintiff's symptom

allegations were not entirely credible in this case. The ALJ did not err in this regard.

**B.    Medical Opinion Testimony**

Plaintiff next contends the ALJ erred by failing to provide legally sufficient reasons for rejecting the medical opinions of treating doctor Jeremiah Crank, M.D., nonexamining doctor Brent Packer, M.D., and consultative psychiatric evaluator Gregory D. Sawyer, M.D., Ph.D. ECF No. 13 at 13-19.

In a disability proceeding, the courts distinguish among the opinions of three types of acceptable medical sources: treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians). *Lester*, 81 F.3d at 830. A treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a nonexamining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester*, 81 F.3d at 830. In weighing the medical opinion evidence of record, the ALJ must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Moreover, the ALJ is required to set forth the reasoning behind his or her decisions in a way that allows for meaningful review. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (finding a clear statement of the agency's reasoning is necessary because the Court can affirm the ALJ's decision to deny benefits only on the grounds invoked by the ALJ). "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).

///

///

### 1. Jeremiah Crank, M.D.

Dr. Crank completed DSHS Physical Functional Evaluation form reports in March 2014 (six months prior to the alleged onset date)[2] and November 2014. Tr. 390-392, 421-423. Dr. Crank marked Plaintiff's back pain as severe, Tr. 391, 422, and checked a box indicating Plaintiff would be limited to sedentary work as a result of the severe back pain, Tr. 392, 423.

The ALJ found the form reports unpersuasive. Tr. 27. The ALJ gave minimal weight to Dr. Crank's reports, finding range of motion testing was noted as completely normal, Tr. 425, there was no explanation or documented examination results supporting the limitation findings,[3] Plaintiff's strength and sensation were both noted as normal, Tr. 468, straight leg raise was positive only on the right, Tr. 468, and subsequent clinical notes include very little treatment for his back complaints. Tr. 27.

The foregoing rationale provided by the ALJ is fully supported. The ALJ thus provided specific and legitimate reasons for his findings, and his interpretation was based on substantial evidence. The Court determines the ALJ's analysis with respect to Dr. Crank's 2014 Physical Functional Evaluation form reports is appropriate.

### 2. Brent Packer, M.D.

In November 2014, Dr. Packer completed a "Review of Medical Evidence" form report. Tr. 443-447. Dr. Packer reported a review of the record showed Plaintiff had a marked limitation with respect to his postural restrictions and he

---

[2]*See Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989) (medical opinions that predate the alleged onset of disability are of limited relevance).

[3]An ALJ's rejection of a check-box report that does not contain an explanation of the bases for the conclusions made is permissible. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)

was thus limited to the performance of only sedentary exertion level work.[4]  Tr. 444.  Dr. Packer also wrote that Plaintiff's spine condition met Listing 1.04A.  Tr. 446.

The ALJ found Dr. Packer's report unpersuasive because he did not examine Plaintiff and only relied on the records from Dr. Crank and earlier medical reports.  Tr. 27.  The ALJ indicated he accorded minimal weight to the form report of Dr. Packer for the same reasons he provided for his assessment of Dr. Crank's report.  Tr. 27.

The ALJ did not reopen the unfavorable decision issued by the prior ALJ, Tr. 18, therefore, records predating the application date in this case are from outside the relevant time period.  As such, all records reviewed by Dr. Packer, other than Dr. Crank's November 2014 form report, are from outside of the relevant time period.  Tr. 446.  Evidence from outside of the relevant time period can be deemed useful as background information; however, it is irrelevant to the extent it does not address Plaintiff's medical status during the period at issue in this action.  *See Fair*, 885 F.2d at 600.

All records reviewed by Dr. Packer, other than Dr. Crank's November 2014 report, are not relevant for purposes of the instant disability application.  Moreover, as discussed above, the ALJ provided adequate rationale, supported by substantial evidence, for rejecting the November 2014 form report of Dr. Crank.  *Supra*.  Accordingly, Dr. Packer's report is not based on pertinent information.  The Court thus concludes the ALJ appropriately accorded minimal weight to Dr. Packer's reviewing opinion.

///

///

---

[4] Dr. Packer later writes within the same form report that Plaintiff's highest work activity should be limited to "less than sedentary."  Tr. 446.

### 3. Gregory D. Sawyer, M.D.

On June 24, 2015, Dr. Sawyer completed a comprehensive psychiatric evaluation of Plaintiff. Tr. 511-518.

It was noted Plaintiff's chief complaint at the time of the evaluation was "I'm here because I'm disabled," Tr. 511, but Plaintiff also informed Dr. Sawyer he was not sure why he was there, Tr. 513. In fact, Plaintiff specifically stated he did not feel he was depressed. Tr. 514, 517. As stated elsewhere in this order, Plaintiff reported to Dr. Sawyer that he was taking psychiatric medications at that time, but the only reason he continued to take those medications was because he understood that if he discontinued use, he would lose his state benefits. Tr. 514. Dr. Sawyer noted Plaintiff was able to concentrate on the exam, follow questions, and give appropriate answers. Tr. 515. However, Dr. Sawyer found Plaintiff was not able to follow a three-step command. *Id.* Dr. Sawyer indicated Plaintiff's recent and remote memory were intact, but his recall and retention were impaired. Tr. 516.

Dr. Sawyer diagnosed major depressive disorder, mild, possibly recurrent, without psychotic features, but opined Plaintiff would not benefit from mental health treatment. Tr. 517. He assessed that Plaintiff would "have difficulty" performing detailed and complex tasks, accepting instructions from supervisors, attempting to understand, carry out and remember complex and one or two-step instructions, attempting to perform work activities on a consistent basis without special or additional instruction, and attempting to sustain concentration and persist in work-related activity at a reasonable pace. Tr. 517-518. However, he further opined Plaintiff would have no difficulty performing simple and repetitive tasks, attempting to maintain effective social interactions on a consistent and independent basis, attempting to maintain regular attendance in the workplace, attempting to complete a normal workday or workweek without interruptions, and attempting to deal with the usual stresses encountered in the workplace. Tr. 517-518.

The ALJ assigned "some weight" to the opinion of Dr. Sawyer. Tr. 27-28. The ALJ found Dr. Sawyer's conclusion that Plaintiff would not have difficulty performing simple and repetitive tasks supported, but rejected Dr. Sawyer's assessment that Plaintiff would have difficulty accepting instructions from supervisors, performing work activities on a consistent basis without special or additional instruction, and sustaining concentration and persisting in work-related activity at a reasonable pace. Tr. 27-28. The ALJ indicated Dr. Sawyer did not explain the basis for his assessed limitations (he did not point to any exam findings to explain his conclusions), he failed to specify whether the assessed limitations were attributed to Plaintiff's mental or physical impairments, the limitations were inconsistent with Plaintiff's activities (particularly his work at Burger King), and the limitations were not consistent with the minimal mental health symptoms noted. Tr. 28.

The Court determines the ALJ correctly found that the "will have difficulty" opinions of Dr. Sawyer, Tr. 27-28, whether based on Plaintiff's physical or mental impairments, were neither explained by Dr. Sawyer, nor supported by specific examination findings. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (an ALJ may discredit a physician's opinion that is conclusory, brief, and unsupported by the record as a whole or by objective medical findings); *see also Tommasetti*, 533 F.3d at 1041 (holding that the existence of internal inconsistencies within a physician's opinion constitutes a specific and legitimate reason for the ALJ to reject that physician's opinion concerning the claimant's functional limitations). Furthermore, the Court agrees with the ALJ that Dr. Sawyer's assessed limitations were not consistent with Plaintiff's work activities. As stated by the ALJ, Plaintiff testified he had to stand for three hour shifts and multitask, and there was no mention of difficulty following the instructions of his supervisors or the need for additional instructions during these shifts. Tr. 28. The
///

limitations are also inconsistent with the unremarkable mental health findings documented in the record.

Based on the foregoing, the Court finds the ALJ provided specific and legitimate reasons, supported by substantial evidence, for not according weight to the opinion of Dr. Sawyer that Plaintiff's mental impairments would cause him to have difficulty with certain work-related activities. The Court concludes that Dr. Sawyer's opinion in this regard is unsupported and inconsistent with the weight of the record evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED August 28, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE